**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **HARRY BARSAMIAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CASE NO:** 07-1248-MLB |
| | ) | |
| **DAVOL INC. and C. R. BARD INC.,** | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff HARRY BARSAMIAN, by and through his undersigned attorneys, hereby complains against the Defendants DAVOL INC. and C. R. BARD INC., and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for damages suffered by Plaintiff HARRY BARSAMIAN as a direct and proximate result of the Defendants DAVOL INC.'s and C. R. BARD INC.'s negligent and wrongful conduct in connection with the design, manufacture and/or distribution of Composix® Kugel Mesh Patches (hereinafter referred to as the "Kugel Patch" or the "subject product").

2. At all times material hereto, the Kugel Patch was designed, manufactured, and/or distributed by the Defendants DAVOL INC. and C. R. BARD INC.

## PARTIES AND JURISDICTION

3. Plaintiff HARRY BARSAMIAN (hereinafter referred to as "Plaintiff" or "Mr. Barsamian") is a citizen and resident of the County of Sedgwick, State of Kansas.

4. Defendant DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Delaware with its principal place of business located at 100 Sockanosset Crossroad, Cranston, in the State of Rhode Island.

5. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

6. DAVOL was at all times relevant present and doing business in the State of Kansas and did substantial and continuous business in the State of Kansas.

7. At all relevant times, DAVOL transacted, solicited, and conducted business in the State of Kansas and derived substantial revenue from such business.

8. At all relevant times, DAVOL expected or should have expected that its acts would have consequences within the United States of America, and the District of Kansas in particular.

9. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey with its corporate headquarters located at 730 Central Avenue, Murray Hill, New Jersey 07974.

10. BARD is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with the material that forms part of the Kugel Patch.

11. BARD was at all times relevant present and doing business in the State of Kansas and did substantial and continuous business in the State of Kansas.

12. At all relevant times, the Defendant, BARD transacted, solicited, and conducted business in the State of Kansas and derived substantial revenue from such business.

13. At all relevant times, the Defendant, BARD expected or should have expected that its acts would have consequences within the United States of America, and the District of Kansas in particular.

14. This Court has jurisdiction pursuant to 28 U.S.C. §1332, in that Plaintiff is a citizen of a State which is different from the States where Defendants DAVOL and BARD are incorporated and have their principal places of business.

15. The amount in controversy exceeds SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of interest and costs.

16. Venue in this district is appropriate under 28 U.S.C. §1391 because a substantial part of the events giving rise to this claim occurred in the district as Plaintiff had a Kugel Patch implanted in this judicial district, and because Plaintiff has at all times relevant resided in this judicial district. Further, venue is proper in this judicial district because the Defendants DAVOL and BARD are doing business in this judicial district.

## FACTUAL BACKGROUND

17. Defendant DAVOL designed, manufactured and distributed the Kugel Patch, a hernia mesh patch, which was inserted into Mr. Barsamian's body.

18. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Kugel Patch that was inserted into Mr. Barsamian's body.

19. The Defendants DAVOL and BARD submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001.

20. Following this 510k Application the Composix Kugel Patch was authorized by the FDA as a Class II medical device.

21. Immediately after the Kugel Patches were placed on the market, DAVOL and BARD began receiving actual notices of memory ring failures and other Kugel Patch defects.

22. DAVOL and BARD actively and intentionally concealed this notice of the defective and dangerous condition associated with the Kugel Patches from Mr. Barsamian, Plaintiff's physicians, and the general public.

23. After the defective and dangerous Kugel Patches were already placed on the market, Defendants DAVOL and BARD conducted physician screenings and reviews as early as 2002.

24. An Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the subject device was incomplete and failed to include all the data from the physicians surveyed during this time.

25. Whether intentionally or negligently, BARD and DAVOL failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or "dissatisfied" results.

26. The complaints and concerns of the physician surveyors were actively concealed by DAVOL and BARD from Mr. Barsamian, Plaintiff's surgeons, and the public at large.

27. On or about May 11, 2005, Mr. Barsamian had a ventral hernia repair performed at Wesley Medical Center in Wichita, Kansas. Mr. Barsamian had a Kugel Patch implanted during this procedure.

28. The Kugel Patch hernia repair product implanted in Mr. Barsamian was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

29. No later than September 2004, Defendants BARD and DAVOL uncovered serious problems with the weld process involving the memory recoil ring of the subject product.

30. Despite attempts to correct the problem at the plant, BARD and DAVOL found the corrective measures to be ineffective and the process still not in control.

31. DAVOL and BARD were aware that these weld issues had existed from the time the Kugel Patches were originally placed on the market and that all current lots suffered from this dangerous defect.

32. This information was intentionally withheld at this time from Mr. Barsamian, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring.

33. During the 2006 EIR, corporate executives informed the FDA that the spring and summer period of 2005 showed a marketed increase in the number of complaints with the Kugel Patch and the memory recoil ring.

34. In spite of their knowledge of increasing complaints and complications, DAVOL and BARD waited until August 30, 2005 to initiate a partial Kugel Patch distribution hold. DAVOL and BARD, however, actively and intentionally chose not to immediately inform Mr. Barsamian, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring.

35. DAVOL and BARD waited until December 2005 to notify the public of the potential severity of the complications which were resulting from the dangerous and defective Kugel Patches and have since admitted that the product quality hold and release procedure was not applied on a timely basis.

36. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

37. On December 22, 2005, DAVOL recalled many sizes of Kugel Patches under a Class I recall notice.

38. The Kugel Patches were recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

39. The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that BARD and DAVOL:

a. had excluded ring failure events, which should have been included from their complication database, reports, and recall notices;

b. misidentified numerous Kugel Patch complication events;

c. failed to apply the product quality hold and release procedure on a timely basis;

d. failed to properly follow the procedures for conducting design validation review;

e. failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Kugel Patch complications; specifically, they provided no justification for including only the Extra Large Kugel Patch sizes in the December 2005 recall;

f. failed to provide full information which they knew regarding numerous Kugel Patch complaints;

g. failed to actually perform strength testing on memory recoil rings for all sizes of Kugel patch before putting them into the stream of commerce; and

h. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases.

40. On March 24, 2006, the initial Class I recall of the Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

41. On January 10, 2007, the existing recall of the Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product.

42. Plaintiff was never informed by Defendants of the defective, dangerous, and recalled nature of the Kugel Patch and memory recoil ring which had been implanted until well after discovering of BARD's and DAVOL's FDA recall of the product.

43. Neither Mr. Barsamian nor Plaintiff's physicians were aware of the defective and dangerous condition of the Kugel Patch or that this unreasonably defective condition was the cause of Mr. Barsamian's injuries until some time after BARD and DAVOL chose to finally inform the general public of the defective nature of the Kugel Patches and the subsequent recalls.

44. Three months later, on or about August 28, 2005, Mr. Barsamian presented to the emergency room and was subsequently found to have an area of fluctuance and erythema (redness) on his abdominal wall requiring an incision and drainage, which expelled copious amounts purulence.

45. Thereafter, on or about September 21, 2005, Mr. Barsamian was re-admitted to the hospital for evaluation of a possible entercutaneous fistula, which resulted in an emergency exploratory laporatomy during which the Kugel Patch was removed.

46. Mr. Barsamian has suffered and will continue to suffer physical pain and mental anguish.

47. Mr. Barsamian has incurred substantial medical bills and Mr. Barsamian has suffered loss of other monies.

48. DAVOL and BARD withdrew a large number of Kugel Patches as a result of the high complication and failure rate of the product.

49. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

50. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled.

51. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

52. Upon information and belief, the complications and failures associated with the Kugel Patches are not limited to the sizes which DAVOL and BARD has already recalled.

53. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design of the non-recalled Kugel Patch sizes and chose not to issue a recall on all Kugel Patches in the face of the high degree of complication and failure rates.

**FIRST CAUSE OF ACTION AS AGAINST THE DEFENDANTS**
**(NEGLIGENCE)**

54. Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in the preceding paragraphs, as though fully set forth herein.

55. Defendants DAVOL and BARD were negligent to Mr. Barsamian.

56. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect , package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patch.

57. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Kugel Patch's users.

58. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

59. DAVOL and BARD were aware of the probable consequences of the Kugel Patch.

60. DAVOL and BARD knew or should have known the Kugel Patch would cause serious injury, however, they failed to disclose the known or knowable risks associated with the Kugel Patch.

61. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Mr. Barsamian.

62. Defendants DAVOL and BARD owed a duty to Mr. Barsamian to adequately warn him and his treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

63. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

64. As a direct and proximate result of the duties breached, the Kugel Patch used in Mr. Barsamian's hernia repair surgery failed, resulting in Mr. Barsamian suffering serious injury, pain and harm.

65. As a direct and proximate result of DAVOL's and BARD's negligence, Mr. Barsamian has suffered injuries and damages.

66. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

67. As a result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will

continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

**SECOND CAUSE OF ACTION AS AGAINST THE DEFENDANTS**
**(STRICT PRODUCTS LIABILITY – FAILURE TO WARN)**

68. Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in the preceding paragraphs, as though fully set forth herein.

69. In the course of business, DAVOL and BARD designed, manufactured and sold the Composix Kugel Patch to Wesley Medical Center for hernia repair surgeries.

70. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Mr. Barsamian received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

71. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

72. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products.

73. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Kugel Patch, including but not limited to rupture of the Kugel Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

74. The dangerous and defective conditions in the Kugel Patches existed at the time they were delivered by the manufacturer to the distributor.

75. At the time Mr. Barsamian had his hernia repair surgery the Kugel Patch was in the same condition as when manufactured, distributed and sold.

76. Mr. Barsamian did not know at the time of use of the Kugel Patch, not at any time prior thereto, of the existence of the defects in the Kugel Patches.

77. Mr. Barsamian suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

78. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

79. As a result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

**THIRD CAUSE OF ACTION AS AGAINST THE DEFENDANTS**
**(STRICT PRODUCTS LIABILITY – DESIGN AND/OR MANUFACTURING DEFECT)**

80. Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in the preceding paragraphs, as though fully set forth herein.

81. Defendants DAVOL and BARD are strictly liable to Mr. Barsamian.

82. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

83. The Kugel Patches subject to the Class I recall were defective because they failed to perform safe and effectively for the purpose they were originally designed.

84. Mr. Barsamian's Kugel Patch was a Class I recalled device that failed while in his body causing him to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of his Kugel Patch.

85. At all times mentioned, the Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

86. The Kugel Patch implanted into Mr. Barsamian was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

87. The Kugel Patches, like the one found in Mr. Barsamian, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Mr. Barsamian as follows:

a. The Kugel Patch was sold in a defective condition by design and manufacture;

b. The Kugel Patch as designed and manufactured was unsafe to Mr. Barsamian;

c. The Kugel Patch as designed and manufactured was unreasonably dangerous to Mr. Barsamian;

d. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Mr. Barsamian, would expect;

e. The Kugel Patch as designed and manufactured was unsafe for its intended use;

f. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

g. DAVOL and BARD knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

h. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

i. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery; and

j. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

88. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award

of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

89. As a result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

**FOURTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS**
**(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**

90. Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in the preceding paragraphs, as though fully set forth herein.

91. Defendants DAVOL and BARD are liable to Mr. Barsamian for the negligent infliction of emotional distress.

92. Mr. Barsamian suffered severe emotional distress, which was as a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Kugel Patch for hernia repair surgery.

93. Mr. Barsamian suffered severe emotional distress, which was as a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery.

94. Therefore, DAVOL and BARD are liable to Mr. Barsamian.

95. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

96. As a result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

**FIFTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS**
**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

97. Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in the preceding paragraphs, as though fully set forth herein.

98. Defendants DAVOL and BARD are liable to Mr. Barsamian for the intentional infliction of emotional distress.

99. Mr. Barsamian suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing,

100. developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Kugel Patch for hernia repair surgery.

101. Mr. Barsamian suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to Mr. Barsamian.

102. Therefore, DAVOL and BARD are liable to Mr. Barsamian.

103. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

104. As a result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

**SIXTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS**
**(BREACH OF IMPLIED WARRANTY)**

105. Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in the preceding paragraphs, as though fully set forth herein.

106. Defendants DAVOL and BARD are liable to Mr. Barsamian for their breach of implied warranty.

107. DAVOL and BARD sold the Kugel Patch which was implanted in Mr. Barsamian. DAVOL and BARD impliedly warranted to Mr. Barsamian, his physicians and health care providers, that the Kugel Patch was of merchantable quality and safe for the use for which they were intended.

108. DAVOL and BARD knew or should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

109. Mr. Barsamian, his physicians and health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Kugel Patch was fit for such use.

110. When the x Kugel Patches were distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

111. Mr. Barsamian suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

112. As a result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

**SEVENTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS**
**(BREACH OF EXPRESS WARRANTY)**

113. Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in the preceding paragraphs, as though fully set forth herein.

114. Defendants DAVOL and BARD are liable to Mr. Barsamian for their breach of express warranty.

115. DAVOL and BARD sold the Kugel Patch which was implanted in Mr. Barsamian. DAVOL and BARD expressly warranted to Mr. Barsamian, his physicians and health care providers, that the Kugel Patch was of merchantable quality and safe for the use for which they were intended.

116. DAVOL and BARD knew or should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

117. Mr. Barsamian, his physicians and health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Kugel Patch was fit for such use.

118. When the Kugel Patches were distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

119. Mr. Barsamian suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

120. As a result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

**EIGTHTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS**
**(FRAUD)**

121. Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in the preceding paragraphs, as though fully set forth herein.

122. In the course of business, DAVOL and BARD designed, manufactured and sold the Kugel Patch for hernia repair surgeries.

123. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Mr. Barsamian received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use.

124. Further the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

125. BARD and DAVOL was aware of the dangerous and defective condition of the products and intentionally withheld this information from Mr. Barsamian, Plaintiff's physicians, and the general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had arisen.

126. BARD and DAVOL fraudulently presented to Mr. Barsamian, Plaintiff's physicians, and the general public that the Kugel Patch was a safe and effective product while they were fully aware that the dangerous and defective nature of the Kugel could and would cause injuries such as those suffered by Plaintiff.

127. Mr. Barsamian and Plaintiff's physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Kugel Patch to be implanted.

128. As a direct and proximate result of Mr. Barsamian's reliance on BARD's and DAVOL's fraudulent misrepresentations and concealments, Mr. Barsamian was seriously and permanently injured.

129. The conduct of BARD and DAVOL in continuing to fraudulently market, promote, sell and distribute the Kugel Patch while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

130. As a result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby requests a trial by jury as to all issues so triable.

Place of Trial: Plaintiff designates Wichita, Kansas as the place for trial.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for judgment against each of the Defendants as follows:

a. Awarding actual damages to the Plaintiff incidental to Plaintiff's use of the subject product in an amount to be determined at trial;

b. Awarding treble and/or punitive damages to the Plaintiff;

c. Awarding pre-judgment and post-judgment interest to the Plaintiff;

d. Awarding the costs and the expenses of this litigation to the Plaintiff;

e. Awarding reasonable attorneys' fees and costs to the Plaintiff as provided by law; and

f. Granting all such other relief as the Court deems necessary, just and proper.

Date: August 22, 2007

Respectfully submitted,

**HUTTON & HUTTON**

By: s/ Deborah B. McIlhenny ______________
Deborah B. McIlhenny (Bar No. 18721)
P.O. Box 638
Wichita, Kansas 67201
Telephone: (316) 688-1166
Facsimile: (316) 686-1077
debs.mcilhenny@huttonlaw.com

**PARKER WAICHMAN ALONSO, LLP**
Jerrold S. Parker
Herbert L. Waichman
Andres F. Alonso
111 Great Neck Road, 1st Floor
Great Neck, New York 11021-5402
Telephone: (516) 466-6500
Facsimile (516) 466-6665

**Attorneys for Plaintiff Harry Barsamian**